UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| Kila POSEY, and THE CLUB AFTER SCHOOL, LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | Civil Action No. |
| v. | ) ) ) | **Jury Trial Demanded** |
| ATLANTA PUBLIC SCHOOLS, and Sharyn BRISCOE, individually and in her official capacity as principal of Mary Lin Elementary School, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COME NOW Plaintiffs Kila Posey ("Ms. Posey") and The Club After School, LLC ("The Club") and file this *Complaint for Damages and Injunctive Relief*, for violations of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, *et seq.* ("Title VI"); 42 U.S.C. § 1981 ("Section 1981"); the First Amendment of the United States Constitution, via 42 U.S.C. § 1983 ("Section 1983"); and the Georgia Open Records Act, O.C.G.A. § 50-18-70, *et seq.* ("the ORA"). In support thereof, Plaintiffs offer the following:

1

## JURISDICTION AND VENUE

1. This Court has original, federal-question jurisdiction over this action, pursuant to 28 U.S.C. § 1331.

2. This Court has personal jurisdiction over Defendants, and venue is proper in this Court, because Defendants reside within this district and division and because the events giving rise to this action occurred therein.

## PARTIES

3. Plaintiffs submit to the jurisdiction of this Court.

4. Defendant Atlanta Public Schools ("APS") is the public school system of the city of Atlanta, Georgia, created and operating under the management and control of the Atlanta Board of Education, pursuant to Ga. Const. art. 8, § 5, ¶ I.

5. Defendant Briscoe is the principal of Mary Lin Elementary School ("Mary Lin"), an agent of Defendant APS.

6. Defendant Briscoe is named both individually and in her official capacity as principal of Mary Lin.

7. Defendant APS may be served with the summons and complaint by service upon the Board of Education's General Counsel, as prescribed in School

Board Policy BBE: School Board Attorney, a copy of which can be found in the City of Atlanta Board of Education's online policy manual.

## FACTS

8. In 2018, after a seventeen-year career in elementary-school teaching and administration, Ms. Posey founded The Club, a business which provides after-school daycare services and of which she is the sole proprietor.

9. Since the beginning of the 2018 school year, The Club has at times provided after-school daycare services for multiple elementary schools in the APS system, including Mary Lin, Springdale Park, and Hope Hill elementary schools.

10. From 2013 until 2022, Ms. Posey's husband, Jason, has been the school psychologist at Mary Lin.

11. Mr. and Ms. Posey are the parents of two APS students, one of whom was in second grade at Mary Lin in 2020.

12. At all times relevant to this complaint, the administration at Mary Lin had a custom of honoring requests by members of its faculty when assigning children to "home room" teachers each year.

13. Mr. and Ms. Posey are Black, as are their two children.

3

14. Prior to the 2020-2021 school year, Mr. and Ms. Posey requested that one of their children, who was entering second grade, be assigned to a specific home room teacher.

15. Mr. and Ms. Posey made this request due to their knowledge of their child's individual educational needs.

16. Defendant Briscoe, acting in her capacity as principal of Mary Lin, informed Mr. and Ms. Posey that she had designated two other home rooms in the second-grade class as the "Black classes" for that year.

17. Principal Briscoe attempted to persuade Mr. and Ms. Posey to place their daughter in one of these "Black classes."

18. Mr. and Ms. Posey were alarmed to learn that Defendant Briscoe was segregating students based on race.

19. On August 5, 2020, Mr. and Ms. Posey discussed their concerns about racial segregation of students—and the implicit derogation of Black faculty members' preferences for their children's home rooms—with Mary Lin Assistant Principal Mary Benton.

20. Like Principal Briscoe, Assistant Principal Benton acknowledged this practice and confirmed that it was Principal Briscoe's decision to segregate students in this way.

21. However, Assistant Principal Benton did nothing to redress Mr. and Ms. Posey's concerns about the racial segregation of elementary students at Mary Lin.

22. In November of 2020, Mr. and Ms. Posey arranged a meeting with APS Chief Academic Officer Yolanda Brown, among others, to discuss their concerns.

23. On March 12, 2021, after investigation, Ms. Brown confirmed that Principal Briscoe had been segregating Black students as Mr. and Ms. Posey had alleged.

24. To Mr. and Ms. Posey's knowledge, Briscoe did not receive any corrective action.

25. In May of 2021, Terry Harness, then-principal of Springdale Park Elementary School, terminated his school's contract for after-school services with The Club.

26. Upon information and belief, Mr. Harness was a close friend and confidant of Defendant Briscoe.

27. Ms. Posey promptly called APS's then-Chief of Schools Anita Williams and Chief Academic Officer Yolanda Brown and told them that she

considered the termination of The Club's contract at Springdale Park to be retaliation for her complaints of racial discrimination by Principal Briscoe.

28. Ms. Williams and Ms. Brown both expressed their shock to Ms. Posey, agreed that it looked retaliatory, and told Ms. Posey they would investigate the situation.

29. The next day, Ms. Williams and Ms. Brown called Ms. Posey and informed her that Principal Briscoe was, like Principal Harness, attempting to terminate Mary Lin's contract with The Club.

30. Ms. Williams and Ms. Brown explained that, after discussing the situation with their legal counsel, they did not believe they had enough evidence to intervene in Principal Harness' decision, but that APS would prevent Principal Briscoe from terminating Mary Lin's contract with The Club.

31. Ms. Williams and Ms. Brown did not provide Ms. Posey with any legitimate, nondiscriminatory explanation for Principal Harness' or Principal Briscoe's decision to terminate their schools' contracts with The Club.

32. During the latter of these May 2021 phone calls, Ms. Posey also secured an oral promise from Ms. Williams and Ms. Brown that APS's policy for contracting with after-school service vendors would be updated to prohibit

retaliation expressly and to implement some kind of due process for contract termination.

33. The last written agreement ("MOU") between The Club and Mary Lin expired at the end of the Spring 2020 semester.

34. In July of 2021, Principal Briscoe began contracting with another after-school service vendor for Mary Lin for the 2021-2022 school year, diverting some of The Club's business to this other vendor.

35. Ms. Posey promptly raised her concerns with APS about this ongoing retaliation.

36. On July 28, 2021, she emailed Ms. Brown, asking for an update on the vendor-contracting policy changes she was promised.

37. Ms. Brown referred Ms. Posey to APS's Program Director of Academics Thomas Munn. Over the next month, Mr. Munn told Ms. Posey multiple times over email that he would investigate the situation, but he did not.

38. In January of 2022, after seven months without an update, Ms. Posey contacted the National Association for the Advancement of Colored People ("NAACP").

39. On April 25, 2022, NAACP representatives visited Mary Lin and conducted a walkthrough of the school with Ms. Posey.

40. Less than two hours after the NAACP representatives left, Principal Briscoe terminated Mary Lin's contract with The Club, again for unspecified reasons, effective May 26.

41. Ms. Posey promptly filed a complaint with APS's Office of Internal Compliance ("OIC").

42. On April 27, 2022, Mr. Munn emailed Ms. Posey apologizing for never following through on his promises the previous July to investigate her complaints.

43. Mr. Munn failed to provide any legitimate, non-retaliatory explanation for Principal Briscoe's actions.

44. On April 28, 2022, Assistant Superintendent Katika Lovett emailed Ms. Posey a copy of the expired MOU, citing the section which provides for termination without cause by either party on thirty days' notice.

45. Like Mr. Munn and Ms. Brown before her, Ms. Lovett also did not provide any legitimate, non-retaliatory explanation for Principal Briscoe's actions.

46. On May 12, 2022, by and through counsel, Ms. Posey submitted a request under Georgia's Open Records Act ("ORA") requesting APS records

regarding her complaints, Principal Briscoe's decisions, and any written communications related thereto.

47. Eight days later, on May 20, 2022, after no response at all, Ms. Posey requested an update on her ORA request.

48. An APS representative acknowledged receipt and said she would have more information the following Monday, May 23, 2022.

49. After six weeks of correspondence, APS had not produced any records, and Ms. Posey submitted a second ORA request on June 27, 2022, again by and through counsel, seeking records related to the investigations into her complaints by APS's OIC and Office of Employee Relations.

50. On June 28, 2022, APS produced its first documents in response to Ms. Posey's ORA requests. APS made several more productions over the following weeks.

51. None of the ORA responses provide a substantive explanation for Principal Briscoe's attempted termination of The Club's contract in 2021, Principal Harness's termination of The Club's contract in 2021, or Principal Briscoe's termination of The Club's contract in 2022.

52. One of Ms. Posey's ORA requests, the first, asked for "all emails, text messages, or other correspondence sent to or received by Sharyn Briscoe between

the dates of May 1, 2020, and the present day, containing" terms such as "Posey," "Black," "segregate," and "The Club."

53.     An APS representative confirmed the existence of over 6,000 such emails.

54.     Despite Ms. Posey's request and payment of APS's invoice for labor, those 6,000-plus emails have yet to be produced as of the filing of this complaint. Despite ample opportunity, APS has also provided no explanation for withholding these emails.

55.     On August 23, 2022, OIC responded to Ms. Posey's complaint, citing, as Assistant Superintendent Lovett did, the expired MOU.

56.     The OIC letter also alleges that Principal Briscoe terminated The Club's contract because of concerns over declining enrollment.

57.     Among the numerous investigations, ORA requests, complaints, and correspondence with APS leadership since May of 2021, this August 2022 letter is the first to reference any "concerns over declining enrollment" as a factor motivating Principal Briscoe's multiple attempts to terminate The Club's contract with Mary Lin.

58. The OIC letter does not discuss Ms. Posey's complaint about Principal Briscoe's efforts to divert business from The Club to another after-school services vendor during the 2021-2022 school year.

59. The OIC letter does state that Principal Briscoe had been planning to terminate The Club's contract a second time since at least January 2022.

60. The OIC letter also states APS has now begun to draft guidelines to assist APS principals considering changes in their after-school vendors—changes Ms. Posey was promised in May of 2021 after Principal Briscoe's first attempt to terminate The Club's contract.

61. On November 14, 2022, the United States Department of Education Office for Civil Rights commenced an investigation into the racial segregation Ms. Posey first complained of in 2020—and into APS's subsequent retaliation against Ms. Posey, her business, and her family.

### LEGAL CLAIMS

**Count I – Title VI of the Civil Rights Act of 1964 ("Title VI")**

62. By this reference, Plaintiffs incorporate the above factual statements as if fully stated herein.

63. Title VI prohibits any recipient of federal financial assistance from discriminating against, excluding, or denying benefits to any person on the basis of race or color. 42 U.S.C. § 2000d.

64. Title VI similarly prohibits any recipient of federal financial assistance from intimidating, threatening, coercing, or discriminating against any individual who "has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VI. 34 C.F.R. § 100.7(e). *See also, e.g.*, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (discussing the breadth of the Civil Rights Act's anti-discrimination protections and the nature of retaliation as a form of intentional discrimination).

65. APS is a recipient of federal financial assistance for the purposes of Title VI.

66. Ms. Posey's complaint in August 2020 regarding the racial segregation of students constituted activity protected under Title VI.

67. Ms. Posey's subsequent complaints of retaliation, set forth in more detail above, are also protected under Title VI.

68. Many of APS's actions toward Ms. Posey and The Club, set forth in more detail above, constitute discrimination and/or retaliation for her complaints, prohibited by Title VI. These actions include but are not limited to:

Principal Briscoe's attempt in 2021 to terminate The Club's contract with Mary Lin; Principal Harness's termination in 2021 of The Club's contract with Springdale Park; Principal Briscoe's efforts in 2021 to divert business from The Club to other after-school service vendors; Director Munn's failure to investigate Ms. Posey's complaints of discrimination and retaliation; and Chief Academic Officer Brown's and Chief of Schools Anita Williams' failure to implement the anti-retaliation protections they promised Ms. Posey as agents of APS.

69. APS is therefore liable to Ms. Posey and to The Club for racial discrimination in violation of Title VI of the Civil Rights Act. Specifically, for the illegal conduct of its agents, APS is separately liable to each Plaintiff for both prospective relief and damages including but not limited to pain and suffering, lost business, punitive damages, attorneys' fees, and other costs of litigation.

**Count II – Section 1981**

70. By this reference, Plaintiffs incorporate the above factual statements as if fully stated herein.

71. Federal statutory law specifically prohibits racial discrimination by anyone in the making and enforcement of contracts. 42 U.S.C. § 1981.

72. Liability for intentional racial discrimination (including retaliation) under 42 U.S.C. § 1981 ("Section 1981") is evaluated according to the same

standards as liability for intentional racial discrimination under the Civil Rights Act of 1964. *See, e.g.*, *Lincoln v. Bd. of Regents of Univ. Sys. of Georgia*, 697 F.2d 928, 935 (11th Cir. 1983).

73. Defendants APS and Briscoe are each therefore liable to Ms. Posey and to The Club for racial discrimination in violation of Section 1981. Specifically, Defendants APS and Briscoe are liable to each Plaintiff for both prospective relief and damages including but not limited to pain and suffering, lost business, punitive damages, attorneys' fees, and other costs of litigation.

**Count III – First Amendment to the United States Constitution**

74. By this reference, Plaintiffs incorporate the above factual statements as if fully stated herein.

75. "To state a § 1983 First Amendment retaliation claim, a plaintiff generally must show: (1) she engaged in constitutionally protected speech, such as her right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

76. Ms. Posey's complaints about racial segregation at Mary Lin were speech protected under the First Amendment.

77. APS's actions toward Ms. Posey and The Club, caused by and in retaliation for her complaints about racial segregation and other protected speech, caused Ms. Posey immediate and long-term, pecuniary and emotional harm, thereby adversely affecting Ms. Posey's First Amendment rights.

78. Many of APS's actions evince deliberate indifference to Ms. Posey's First Amendment rights by APS agents with supervisory authority. These actions include but are not limited to: Principal Briscoe's attempt in 2021 to terminate The Club's contract with Mary Lin; Principal Harness's termination in 2021 of The Club's contract with Springdale Park; Principal Briscoe's efforts in 2021 to divert business from The Club to other after-school service vendors; Director Munn's failure to investigate Ms. Posey's complaints of discrimination and retaliation; and Chief Academic Officer Brown's and Chief of Schools Anita Williams' failure to implement the anti-retaliation protections they promised Ms. Posey as agents of APS.

79. Defendants APS and Briscoe are each therefore liable, via 42 U.S.C. §1983, to Ms. Posey and to The Club for retaliation in violation of the First Amendment. Specifically, Defendants APS and Briscoe are liable to each Plaintiff

for both prospective relief and damages including but not limited to pain and suffering, lost business, punitive damages, attorneys' fees, and other costs of litigation.

### Count IV – Georgia's Open Records Act ("ORA")

80. By this reference, Plaintiffs incorporate the above factual statements as if fully stated herein.

81. Georgia law provides for a "strong public policy" and "strong presumption" in favor of public access to public records, and for the availability of these records "without delay." O.C.G.A. § 50-18-70.

82. Absent some specific exemption, "[a]ll public records shall be open for personal inspection and copying," and public agencies "shall produce for inspection all records responsive to a request <u>within a reasonable amount of time not to exceed three business days</u> of receipt of a request." O.C.G.A. § 50-18-71 (emphasis added).

83. "In any instance in which an agency is required to or has decided to withhold all or part of a requested record, the agency shall notify the requester of the specific legal authority exempting the requested record or records from disclosure by Code section, subsection, and paragraph <u>within a reasonable amount of time not to exceed three business days</u> or in the event the search and

retrieval of records is delayed pursuant to this subsection or pursuant to subparagraph (b)(1)(A) of this Code section, then no later than three business days after the records have been retrieved." *Id.* (emphasis added)

84.     As set forth above, APS acknowledges the existence of records Ms. Posey has requested on multiple occasions since May 12, 2022, but APS has neither produced those records nor provided an explanation for its decision to withhold them.

85.     APS is therefore liable to Ms. Posey and to The Club for its ongoing violations of Georgia's ORA. Specifically, for its illegal conduct, APS is liable to each Plaintiff for prospective relief, damages including but not limited to attorneys' fees, and other penalties as provided in O.C.G.A. §§ 50-18-73, 50-18-74.

WHEREFORE, Plaintiffs pray:

a.   for a trial by jury;

b.   for judgment in Plaintiffs' favor on the claims asserted herein;

c.   for an order declaring Defendants to be in violation of the Civil Rights Act, Section 1981, the First Amendment to the United States Constitution, and Georgia's Open Records Act;

d.   for an order directing Defendant Briscoe to renew Mary Lin's contract for after-school services with The Club;

e. that Defendants be required to pay compensatory and punitive damages to Plaintiffs, in an amount determined by the enlightened conscience of the jury;

f. that Plaintiffs be awarded reasonable attorneys' fees and costs; and

f. that the Court grant other legal and equitable relief as the court finds appropriate.

Respectfully submitted this January 23, 2023.

                    */s/ James Radford*
                    James Radford
                    Georgia Bar No. 108007

                    */s/ Jake Knanishu*
                    Jake Knanishu
                    Georgia Bar No. 597103
                    *Counsel for Plaintiff*

RADFORD & KEEBAUGH
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300
james@decaturlegal.com
jake@decaturlegal.com