## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Kila Posey and The Club After
School, LLC,

               Plaintiffs,

                            Case No. 1:23-cv-341-MLB

v.

Atlanta Public Schools and Sharyn
Briscoe, individually and in her
official capacity as principal of
Mary Lin Elementary School,

               Defendants.

_____/

## OPINION & ORDER

Plaintiffs sued Defendants for race-based retaliation in violation of federal law and for failure to produce documents about that retaliation in violation of the Georgia Open Records Act. Defendants move to dismiss. (Dkt. 8.) The Court grants Defendants' motion in part and denies it in part.

## I.    Background

Defendant Sharyn Briscoe is the principal of Mary Lin Elementary School within the Atlanta Public Schools ("APS") system. (Dkt. 4 ¶ 5.)

In mid-2020, Plaintiff Kila Posey (a black woman) asked Defendant Briscoe to assign her daughter (a black Mary Lin student) to a specific second-grade class for the 2020–2021 school year.  (Dkt. 4 ¶¶ 11, 13–14.)  Defendant Briscoe replied that "she had designated two other [classes] in the second-grade . . . as the 'Black classes' for that year."  (Dkt. 4 ¶ 16.)  She encouraged Plaintiff Posey to put her daughter in one of those classes.  (Dkt. 4 ¶ 17.)

In August 2020, Plaintiff Posey reported this interaction to Mary Lin's Assistant Principal and expressed concern that Defendant Briscoe was "segregating students based on race."  (Dkt. 4 ¶¶ 18–19.)  The Assistant Principal said she was aware of the practice and confirmed Defendant Briscoe was behind it.  (Dkt. 4 ¶ 20.)  In November 2020, Plaintiff Posey escalated her complaint to the APS Chief Academic Officer.  (Dkt. 4 ¶ 22.)  In March 2021, after an APS investigation, the school system's Chief Academic Officer called Plaintiff Posey and confirmed Defendant Briscoe was "segregating Black students at Mary Lin as alleged."  (Dkt. 4 ¶ 23.)  Defendant Briscoe received no corrective action.  (Dkt. 4 ¶ 24.)

Two months later, the principal of another APS elementary school (Springdale Park) terminated the contract between his school and Plaintiff The Club After School LLC, an after-school daycare company Plaintiff Posey owns. (Dkt. 4 ¶¶ 8–9, 25.) The Springdale principal was close friends with Defendant Briscoe and knew about Plaintiff Posey's segregation complaints. (Dkt. 4 ¶ 26.)

Plaintiff Posey immediately called two APS officials (the Chief of Schools and Chief Academic Officer) and told them she believed the Springdale principal had terminated her contract in retaliation for her complaints about Defendant Briscoe. (Dkt. 4 ¶ 27.) The officials agreed the termination looked retaliatory and said they would investigate. (Dkt. 4 ¶ 28.) The next day, they called Plaintiff Posey back and said Defendant Briscoe was also attempting to terminate Mary Lin's contract with The Club. (Dkt. 4 ¶ 29.) The officials said APS would stop Defendant Briscoe from doing so. (Dkt. 4 ¶ 30.) They said they could not stop the Springdale principal's decision because, after speaking with legal counsel, "they did not believe they had enough evidence to intervene." (Dkt. 4 ¶ 30.) The officials also said APS would update its

policies to prohibit retaliation and require due process in its contracts with after-school companies.  (Dkt. 4 ¶ 32.)

In July 2021, Defendant Briscoe contracted with another after-school company for the 2021–2022 school year, which "divert[ed] some of The Club's business."  (Dkt. 4 ¶ 34.)  Plaintiff Posey reported this "ongoing retaliation" to APS.  (Dkt. 4 ¶ 35.)  She also asked the APS Chief Academic Officer for on update on the contracting policy changes APS had promised.  (Dkt. 4 ¶ 36.)  The Chief Academic Officer referred Plaintiff Posey to the APS Program Director of Academics, who repeatedly promised to "investigate the situation" but never did.  (Dkt. 4 ¶¶ 37, 42.)

In January 2022, Plaintiff Posey reported her concerns to the National Association for the Advancement of Colored People ("NAACP"). (Dkt. 4 ¶ 38.)  In April 2022, she and the NAACP visited Mary Lin and "conducted a walkthrough of the school."  (Dkt. 4 ¶ 39.)  Less than two hours later, Defendant Briscoe terminated Mary Lin's contract with The Club without explanation.  (Dkt. 4 ¶ 40.)  Plaintiff Posey promptly filed a complaint with the APS Office of Internal Compliance ("OIC"). (Dkt. 4 ¶ 41.)

Shortly thereafter, an APS Assistant Superintendent sent Plaintiff Posey a copy of an expired written agreement between Mary Lin and The Club, noting a clause that permitted "termination without cause by either party." (Dkt. 4 ¶¶ 33, 44.) The OIC also sent Plaintiff Posey a letter highlighting the same provision. (Dkt. 4 ¶ 55.) The OIC letter said Defendant Briscoe "terminated The Club's contract because of concerns over declining enrollment," Defendant Briscoe had been "planning" to do so since at least January 2022, and APS was drafting new guidelines for after-school contracts. (Dkt. 4 ¶¶ 56, 59–60.)

Plaintiff Posey later submitted two requests under the Georgia Open Records Act for APS documents concerning her complaints, Defendant Briscoe's decisions, and any related APS investigations. (Dkt. 4 ¶¶ 46, 49.) According to Plaintiffs, APS withheld over 6,000 responsive emails without explanation. (Dkt. 4 ¶¶ 52–54.)

In 2023, Plaintiffs sued Defendants for retaliation under Title VI of the Civil Rights Act of 1964 (Count 1), retaliation under 42 U.S.C. § 1981 (Count 2), retaliation under the First Amendment (Count 3), and inadequate document production under the Georgia Open Records Act ("ORA") (Count 4). (Dkt. 4 ¶¶ 62–85.) Counts 1–3 do not flesh out

Plaintiffs' retaliation theories with specificity. But, in general, they claim Defendants punished Plaintiffs for complaining about racial segregation at Mary Lin and then punished Plaintiffs again for complaining about that punishment. Count 4 claims APS failed to produce at least 6,000 documents in violation of the ORA. Plaintiffs seek damages, declaratory relief, and "an order directing Defendant Briscoe to renew Mary Lin's contract for after-school services with The Club." (Dkt. 4 at 18–19.)

Defendants now move to dismiss Counts 1–3 (retaliation) for failure to state a claim. APS also moves to dismiss Count 4 (ORA) for lack of subject matter jurisdiction.[1]

---

[1] Plaintiffs bring this action against Defendant Briscoe both in her individual capacity and in her official capacity as principal of Mary Lin. (Dkt. 4 ¶ 6.) The parties' briefing does not explicitly address Plaintiffs' official-capacity claims against Defendant Briscoe. And those claims are likely duplicative of Plaintiffs' claims against APS. So this Order does not discuss them further. *See Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) ("[A] suit against a governmental official in his official capacity is deemed a suit against the entity that he represents."); *see, e.g.*, *McCutchen v. DeKalb Cnty. Sch. Dist.*, 2020 WL 11895506, at *7 (N.D. Ga. May 11, 2020) (treating official-capacity claims against a school principal as claims against the school district); *Yates v. Cobb Cnty. Sch. Dist.*, 2016 WL 9444376, at *2 n.3 (N.D. Ga. Aug. 4, 2016) (same).

## II.      Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This requires more than a "mere possibility of misconduct." *Id.* at 679.  Plaintiff's well-pled allegations must "nudge[] [her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.     Plaintiffs' Title VI Claim (Count 1)

In Count 1, Plaintiffs asserts a Title VI retaliation claim against APS. (Dkt. 4 ¶¶ 62–69); *see Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003) ("Title VI . . . does not recognize individual liability.").  Title VI prohibits race discrimination in "any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d; *see Burton v. City of Belle Glade*, 178 F.3d 1175, 1202 (11th Cir. 1999).  "Title VI's prohibition on racial discrimination is also construed as prohibiting retaliation for complaining about discrimination."

*Farrukh v. Univ. of S. Fla. Bd. of Trustees*, 2022 WL 3973703, at *3 (11th Cir. Sept. 1, 2022).[2]   To plead a retaliation claim under Title VI, "a plaintiff must plausibly allege (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Little v. CSRA, Inc.*, 834 F. App'x 495, 499 (11th Cir. 2020); *see Farrukh*, 2022 WL 3973703, at *3.  APS moves to dismiss under the second and third elements.[3]

## A.   Adverse Action

Under the second element of their retaliation claim, Plaintiffs must show APS subjected them to a "materially adverse" action.  An action is materially adverse if it "would dissuade a reasonable person from making or supporting a charge of discrimination."  *Bowers v. Bd. of Regents of*

---

[2] The Court recognizes *Farrukh* is not binding.  The Court cites it (and other unpublished decisions) as instructive nonetheless.  *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

[3] APS also claims two of Plaintiffs' oppositional acts—the Springdale complaint and the NAACP walkthrough—were not protected activities under the first element.  (Dkt. 13 at 10–11.)  But it does so only in its reply brief.  So the Court disregards the argument.  *See United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court.").

*Univ. Sys. of Georgia*, 509 F. App'x 906, 911 (11th Cir. 2013). This requires "significant" action that "produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006); *see Rayner v. Dep't of Veterans Affs.*, 684 F. App'x 911, 915 (11th Cir. 2017); *Hall v. Dekalb Cnty. Gov't*, 503 F. App'x 781, 789 (11th Cir. 2013). "[P]etty slights, minor annoyances, and [a] simple lack of good manners" are insufficient. *Burlington*, 548 U.S. at 68.

The complaint claims APS subjected Plaintiffs to at least nine retaliatory acts: (1) Defendant Briscoe attempted to terminate Mary Lin's contract with The Club in 2021; (2) Defendant Briscoe contracted with another after-school company in 2021; (3) APS failed to discipline Defendant Briscoe for segregating students; (4) APS failed to discipline Defendant Briscoe for trying to terminate The Club's contract in 2021; (5) the APS Program Director of Academics failed to investigate Plaintiffs' complaints; (6) the APS Chief Academic Officer and the APS Chief of Schools failed to implement the anti-retaliation protections they promised; (7) APS failed to "restrain Principal Briscoe's authority to make and terminate contracts with after-school vendors, despite APS's actual knowledge of her retaliatory animus toward [Plaintiffs]";

(8) APS failed to respond adequately to Plaintiffs' ORA requests; and (9) Defendant Briscoe terminated Mary Lin's contract with The Club in 2022. (Dkt. 4 ¶ 68.)[4]

APS claims the first five retaliatory acts do not meet the definition of a materially adverse action. (Dkts. 8 at 10–11; 13 at 12.) The Court agrees. With respect to (1), Defendant Briscoe's 2021 termination attempt did not cause Plaintiffs any "tangible harm" because the attempt was unsuccessful. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) ("[T]he decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action."); *see Swindle v. Jefferson Cnty. Comm'n*, 593 F. App'x 919, 926 (11th Cir. 2014) (no adverse action where the threatened action "never occurred" because "the officer making the decision changed his mind"); *Smith v. City of Fort Pierce, Fla.*, 565 F. App'x 774, 778 (11th Cir. 2014) (defendant's "threat[] to terminate

---

[4] The complaint also says Defendants retaliated against Plaintiffs when the Springdale principal terminated the contract between his school and The Club. (Dkt. 4 ¶ 68.) But Plaintiffs now concede this was not a materially adverse action. (Dkt. 12 at 13.)

10

[plaintiff's] employment" was not materially adverse because defendant "ultimately" did not follow through).

With respect to (2), Defendant Briscoe's engagement of another after-school company is too "trivial" to be materially adverse. *Hilliary v. FlightSafety Int'l, Inc.*, 778 F. App'x 835, 841 (11th Cir. 2019). Nothing suggests it is unusual or surprising for a school to engage multiple daycare companies (indeed, a memorandum of understanding between APS and The Club explicitly contemplates it). (Dkt. 8-1 at 2.) And nothing suggests Plaintiffs suffered any "material injury or harm" as a result. *Morales v. Georgia Dep't of Hum. Res., Dep't of Hum. Res., Div. of Fam. & Child. Servs.*, 446 F. App'x 179, 184 (11th Cir. 2011). True, the complaint says Defendant Briscoe's decision "divert[ed] *some* of The Club's business" to the new vendor. (Dkt. 4 ¶ 34 (emphasis added).) But the complaint does not say this business was "significant" or resulted in a "tangible, negative effect" such as lost income. *Hall*, 503 F. App'x at 790; *Swindle*, 593 F. App'x at 926; *see, e.g.*, *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 715 (11th Cir. 2013) ("reprimands" and "negative performance evaluation" were not materially adverse because

nothing suggested they would "impact [plaintiff's] salary or job status");
*Morales*, 446 F. App'x at 183–84 (same).

With respect to (3)–(5), APS's failure to discipline Defendant
Briscoe and adequately investigate Plaintiffs' complaints also fall short
of a materially adverse action.  The general rule is that "failures to
investigate and discipline other employees are not [adverse actions]
because they are not actions directed at the plaintiff."  *Hilliary v.
FlightSafety Int'l, Inc.*, 2018 WL 8799303, at *12 (N.D. Ga. Aug. 17,
2018); *see Pritchett v. Heat Transfer Prod. Grp., LLC*, 2021 WL 2042950,
at *6 (N.D. Ala. May 21, 2021) (same).  Plaintiffs do not argue an
exception applies here.  (Dkt. 12 at 12.)  And the Court declines to read
one in uninvited.  *See Entrekin v. City of Panama City Fla.*, 376 F. App'x
987, 995 (11th Cir. 2010) (employer's failures to "investigate" and
"sustain" plaintiff's complaints against other employees were not adverse
actions because "these actions were not taken against [plaintiff]
herself").[5]

---

[5] To the extent APS also asks the Court to dismiss retaliatory acts (6)–(7),
the Court denies that request because APS's briefing never explicitly
addresses those acts or explains why they fall within APS's general
theories for dismissal.  (*See* Dkt. 12 at 12 (noting APS's failure to "parse

## B.     Causal Connection

Under the third element of their retaliation claim, Plaintiffs must show APS subjected them to adverse action "because" of their protected activity.  *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (Title IX); s*ee McCullough v. Bd. of Regents of the Univ. Sys. of Georgia*, 623 F. App'x 980, 982 (11th Cir. 2015) ("[W]e construe Titles VI and IX in pari materia.").   This requires a but-for causal link between the protected activity and the adverse action.  *See Lapham v. Walgreen Co.*, 88 F.4th 879, 891 (11th Cir. 2023) (the word "because" suggests but-for causation); *Kocsis v. Fla. State Univ. Bd. of Trustees*, 788 F. App'x 680, 686 (11th Cir. 2019) ("Causation [in a Title IX retaliation case] must be established according to traditional principles of but-for causation.").[6]

_____

out" the retaliatory acts alleged in the complaint).)  The Court also denies APS's request to dismiss retaliatory act (8) because APS did not make that request until its reply brief, which was too late.  (Dkt. 13 at 15.)  APS may raise these issues at summary judgment or another appropriate time.

[6] *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 289 (2023) (Gorsuch, J. concurring) (Title VI requires but-for causation); *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 236 (4th Cir. 2021) (Title IX requires but-for causation); *Trudeau v. Univ. of N. Texas, By & Through its Bd. of Regents*, 861 F. App'x 604, 608 (5th Cir. 2021) (applying but-for causation to Title IX retaliation claims); *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*,

APS says the Court should dismiss Count 1 to the extent it is predicated on retaliatory act (9)—Defendant Briscoe's termination of The Club—because there is no causal link between that adverse action and any alleged protected activity, including Plaintiffs' "walkthrough of the school" with the NAACP.  (Dkt. 8 at 13–14.)   The Court is unconvinced.  The Eleventh Circuit has held, and the parties agree, that "very close temporal proximity" between a protected activity and an adverse action is enough to establish causation at the pleading stage. (Dkts. 8 at 11–12; 12 at 13.)[7]   Such proximity exists here because

851 F.3d 690, 695 (7th Cir. 2017) (Title IX retaliation claims require but-for causation); *Mathews v. Clark Atlanta Univ., Inc.*, 2023 WL 2229670, at *11 (N.D. Ga. Jan. 13, 2023) (applying but-for causation standard to Title IX retaliation claims); *Garrett v. Univ. of S. Fla. Bd. of Trustees*, 448 F. Supp. 3d 1286, 1307 (M.D. Fla. 2020) (same); *see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (but-for causation "supplies the default or background rule against which Congress is normally presumed to have legislated," including with respect to "federal antidiscrimination laws"); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (but-for causation standard applies to Title VII retaliation claims); *Bowers*, 509 F. App'x at 911 ("[W]e apply the framework for Title VII retaliation claims to [plaintiff's] Title IX retaliation claim.").

[7] *See, e.g.*, *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 642 (11th Cir. 2018); *McGuire v. United Parcel Serv., Inc.*, 763 F. App'x 890, 898 (11th Cir. 2019); *Jones v. Unity Behav. Health, LLC*, 2021 WL 5495578, at *2 (11th Cir. Nov. 23, 2021); *Greene v. Alabama Dep't of Revenue*, 746 F. App'x 929, 932 (11th Cir. 2018); *Woods v. Lockheed Martin Corp.*, 2022 WL 2972852, at *3 (11th Cir. July 27, 2022).

Defendant Briscoe terminated The Club's contract (adverse action) just *two hours* after Plaintiffs' NAACP walkthrough (protected activity). That proximity is "sufficient on its own to establish causation." *Fonte v. Lee Mem'l Health Sys.*, 2021 WL 5368096, at *6 (11th Cir. Nov. 18, 2021).

APS admits this would normally be true, but it invokes what the Eleventh Circuit has called an "exception" to the temporal proximity rule. *Id.*; (*see* Dkt. 8 at 13–14). Under that exception, "when [a defendant] contemplates an adverse . . . action before [a plaintiff] engages in protected activity, temporal proximity between the protected activity and the subsequent adverse . . . action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). APS says this exception applies here because Defendant Briscoe tried to terminate The Club's contract (adverse action) almost a year before Plaintiffs walked through Mary Lin with the NAACP (protected activity). (Dkt. 8 at 13–14). Thus, when Defendant Briscoe ultimately did terminate the contract, she was simply "proceeding along lines previously contemplated," not retaliating for the walkthrough. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).

This argument has some appeal. But it ignores something important. Yes, Defendant Briscoe tried to terminate The Club in May 2021, long before Plaintiff Posey's walkthrough in April 2022. But Plaintiff had already complained about Defendant Briscoe's segregation policy in 2020. So Defendant Briscoe contemplated the adverse action only *after* Plaintiff engaged in related protected activity. This destroys the idea that Defendant Briscoe first contemplated termination at a time when she could not have had retaliatory animus. Indeed, APS officials believed she *did* have retaliatory animus, which is why they stopped her initial termination effort. If the May 2021 termination attempt was or even could have been retaliatory, it is hard to see how it proves the April 2022 termination was not. It is also hard to see why it should exempt APS from a temporal proximity rule that everyone agrees would otherwise establish retaliation here. That is especially true because the temporal proximity in this case—only two hours—is so striking and unusually suggestive. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (seven-week gap established prima-facie causation at summary judgment).

APS does not meaningfully address these issues in its briefing, even though Plaintiffs raised them in their own briefing. (Dkts. 12 at 13–14; 13 at 13–15.) So, at this juncture, the Court declines to resolve them in APS's favor. APS may yet prevail on the merits. And our case may well fall within the exception to the temporal proximity rule. But, at this early stage, APS has not done enough to show that result is warranted. The Court declines to dismiss Count 1 on causation grounds.[8]

---

[8] The Court pauses to flag some uncertainty and confusion in the caselaw. To establish a prima facie case at summary judgment, a retaliation plaintiff need only show "the protected activity and the adverse action were not wholly unrelated." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021). The but-for causation standard—which is "more demanding"—does not kick in until the pretext stage of the burden-shifting framework. *Id.*; *but see Lapham*, 88 F.4th at 894. The pleading stage is different. Plaintiff must plead but-for causation right from the start; the "not wholly unrelated" standard plays no role in the analysis. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017) (at the pleading stage "a plaintiff must plausibly allege all the elements of the claim for relief"). This means summary-judgment caselaw on causation—at least at the prima facie stage of the analysis—does not necessarily apply at the pleading stage, even though courts and litigants routinely act like it does. *See Gilliam v. U.S. Dep't of Veterans Affs.*, 822 F. App'x 985, 990 (11th Cir. 2020) (applying the "not completely unrelated" causation standard at the pleading stage); *Williams v. Cnty. of Volusia, Fla.*, 2018 WL 3817761, at *3 n.5 (M.D. Fla. Aug. 10, 2018) (noting "abundant caselaw .

## C.   Damages

Count 1 seeks damages for pain and suffering.  (Dkt. 4 ¶ 69.)
APS claims Title VI does not allow such damages.  (Dkt. 8 at 22.)  The
caselaw supports APS's position.  *See Barnes v. Gorman*, 536 U.S. 181,
187 (2002) (Title VI plaintiffs are limited to "remedies traditionally
available in suits for breach of contract"); *Kozan v. Comstock*, 270 F.2d
839, 846 n.16 (5th Cir. 1959) ("As a general rule a plaintiff in a suit for

---

. . requiring plaintiffs to allege the prima facie elements of a retaliation
claim to survive a motion to dismiss").

The temporal proximity rule, which the Court applies here at the parties'
invitation, is a good example of the awkwardness that can arise from
treating prima-facie causation and pleading-stage causation as
synonymous.  At summary judgment, the Eleventh Circuit has said
temporal proximity *can* establish prima-facie causation but *cannot*
establish but-for causation.  *See Shannon v. Bellsouth
Telecommunications, Inc.*, 292 F.3d 712, 716–17 (11th Cir. 2002); *Gogel
v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1138 n.15 (11th Cir.
2020).  If temporal proximity is not enough to establish a reasonable
inference of but-for causation at the summary judgment stage, it is at
least debatable whether it can establish that inference at the pleading
stage.  *See Whitworth v. SunTrust Banks, Inc.*, 2018 WL 1634301, at *11
(N.D. Ga. Mar. 30, 2018) ("[T]emporal proximity does not equate to
but-for causation."); *Brown v. Cherokee Nitrogen, LLC*, 2023 WL
5103384, at *10 (N.D. Ala. Aug. 9, 2023) (same); *Montgomery v. Bd. of
Trustees of the Univ. of Alabama*, 2015 WL 1893471, at *4 (N.D. Ala. Apr.
27, 2015) (same).  But that is exactly what courts assume when they
uncritically import prima-facie principles to the pleading stage.  The
Court makes the same assumption here only because the parties have
done so themselves.

breach of contract cannot get damages for pain and suffering."); *Seok Hwi Cha v. Kani House Japanese Rest.*, 2017 WL 11616366, at *2 (N.D. Ga. Oct. 16, 2017) (same).  Plaintiffs do not argue otherwise.  (*See* Dkt. 13 n.1.)  So the Court dismisses Count 1 to the extent it seeks damages for pain and suffering.  *See Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, 2023 WL 348320, at *3–4 (S.D. Ill. Jan. 20, 2023) (Title VI remedies do not include damages for pain and suffering); *Doe v. City of Pawtucket*, 633 F. Supp. 3d 583, 588–91 (D.R.I. 2022) (same).

## D.  Conclusion

Count 1 is dismissed to the extent it claims retaliatory acts (1)–(5) were materially adverse actions and to the extent it seeks damages for pain and suffering.  It may proceed only in regard to retaliatory acts (6)–(9) and only for appropriate damages or non-monetary relief.[9]

---

[9] To prevail on a retaliation claim, a plaintiff must show *she* suffered an adverse action for her *own* protected activity.  *See Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (retaliation plaintiff must show "*he* engaged in statutorily protected activity" for which "*he* suffered a materially adverse action" (emphasis added)); *Ricketts v. Wake Cnty. Bd. of Educ.*, 2022 WL 3053762, at *10 (E.D.N.C. July 6, 2022) (retaliation requires "a material adverse action against plaintiff for her own protected activity").  That may very well prevent Plaintiff Posey from asserting a claim based on Defendant Briscoe's termination of The Club's contract or prevent The Club from asserting a claim based on Plaintiff Posey's

## IV.   The Club's Section 1981 Claim (Count 2)

In Count 2, The Club asserts a retaliation claim under Section 1981 against both Defendants.   (Dkt. 4 ¶¶ 70–73.)   To plead such a claim, The Club must plausibly allege the same elements as its Title VI retaliation claim: (1) it engaged in protected activity, (2) it suffered a materially adverse action, and (3) there was a but-for causal connection between the protected activity and the adverse action.   *See Miller v. Alli*, 2023 WL 7923888, at *3 (11th Cir. Nov. 16, 2023); *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 867 n.12 (11th Cir. 2020).   Defendants move to dismiss for failure to plead these elements.   (Dkt. 8 at 5–14.)   Defendants also say that, even if the complaint does plead the requisite elements, any violation was not clearly established (so Defendant Briscoe gets qualified immunity) and was not attributable to APS (so APS cannot be liable).   (Dkt. 8 at 14–21.)[10]

---

protected activity.   But, Defendants do not move to dismiss Count 1 on the theory that Plaintiffs impermissibly seek to match an adverse action suffered by one Plaintiff to the protected activity of another.   So, at this stage, the Court does not consider whether such a theory requires dismissal here.

[10] The parties dispute whether Plaintiff Posey has standing to assert Count 2.   (*See* Dkts. 8 at 5–7; 12 at 15–16.)   The Court need not resolve that issue because, as the Court reads the complaint, only The Club

## A.   Retaliation Elements

### 1.   Protected Activity

"A plaintiff engages in a statutorily protected activity when he [or she] asserts a right encompassed by § 1981." *Hayes v. ATL Hawks, LLC*, 844 F. App'x 171, 183 (11th Cir. 2021). Section 1981 encompasses the right to "make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006); *see* 42 U.S.C. § 1981(a).[11] Thus, to engage in protected activity under Section 1981, plaintiff must complain about a race-based "contractual injury" such as the "violation of [a] person's contract related rights" or the "impair[ment]" of a "contractual relationship." *Domino's Pizza*, 546 U.S. at 476; *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021); *Hayes*, 844 F. App'x at 183. The complained-of conduct need not

---

asserts a claim in Count 2. (*See* Dkt. 4 ¶ 73 ("Defendants APS and Briscoe are each therefore liable to *The Club* for racial discrimination in violation of Section 1981." (emphasis added)); *compare with* Dkt. 4 ¶¶ 69, 79, 85 (all other counts asserting Defendants are "liable to Ms. Posey *and* to The Club" (emphasis added)).)

[11] Section 1981 also protects other rights, including the right "to sue, be parties, [and] give evidence" and the right "to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). But no one suggests these rights are implicated here.

actually violate Section 1981; it is enough that plaintiff reasonably believed it did. *See Elite Amenities, Inc. v. Julington Creek Plantation Cmty. Dev. Dist.*, 784 F. App'x 750, 752 (11th Cir. 2019); *Jackson v. Geo Grp., Inc.*, 312 F. App'x 229, 233–34 (11th Cir. 2009).

The complaint does not identify each alleged protected activity in a clear list. But, as best the Court can tell, it tries to plead at least seven such activities: (1) Plaintiff Posey complained about classroom segregation in August 2020; (2) Plaintiff Posey complained about classroom segregation in November 2020; (3) Plaintiff Posey complained in May 2021 that Springdale terminated The Club's contract in retaliation for her segregation complaints; (4) Plaintiff Posey complained in July 2021 that Defendant Briscoe engaged another after-school company in retaliation for her complaints; (5) Plaintiff Posey complained to the NAACP in January 2022; (6) Plaintiff Posey "conducted a walkthrough of the school" with the NAACP in April 2022; and (7) Plaintiff Posey told APS in April 2022 that Defendant Briscoe terminated The Club's contract in retaliation for her complaints. (*See* Dkt. 4 ¶¶ 19, 22, 27, 35, 38–41.) Activities (1)–(2) were segregation complaints. Activities (3), (4), and (7) were retaliation complaints. And,

22

absent any argument to the contrary, the Court construes activities (5)–(6) as complaints about both segregation and retaliation (though the Court is willing to revisit that issue down the road with input from the parties).

Defendants claim *The Club* did not engage in any protected activity because *Plaintiff Posey* was the only person who ever complained about discrimination or retaliation.  (Dkt. 8 at 8.)   The Court agrees that Plaintiff Posey—not The Club—made the segregation complaints.  (Dkt. 12 at 8–9.)   After all, the segregation complaints involved the class placement (or potential placement) of Plaintiff Posey's daughter, which had nothing to do with her company.  So Count 2 may not proceed to the extent it claims The Club engaged in protected conduct in activities (1)–(2).   But the complaint supports a reasonable inference that Plaintiff Posey made her *retaliation* complaints (activities (3)–(7)) in her role as owner of The Club.  (*See* Dkt. 12 at 8–9.)  Plaintiff Posey was The Club's sole proprietor, which made her "an agent of the . . . company for the purpose of its business and affairs."  O.C.G.A. § 14-11-301(a).  And her complaints sought to protect The Club's interests because they challenged what she perceived to be retaliation against The Club,

including the termination of its business relationships.  At the pleading stage, this is enough to impute Plaintiff Posey's retaliation complaints to The Club.

Defendants also claim the segregation complaints were unprotected because they "had nothing to do with the making and enforcing of contract rights." (Dkt. 8 at 8–9.)  The Court agrees.  Plaintiffs do as well. (*See* Dkt. 12 at 8 (admitting "Posey's objections to classroom segregation do not implicate Section 1981 because they did not implicate contractual rights.").)  Defendants then claim that, since the segregation complaints weren't protected, The Club's retaliation complaints weren't either because they ultimately grew out of the segregation complaints.  (Dkt. 13 at 9.)  That is, since The Club objected to retaliation for complaints that lacked the requisite contractual nexus, those objections must necessarily lack that nexus as well.  The Court rejects this argument.  Whether the segregation complaints involved a contractual injury says nothing about whether the retaliation complaints involved such an injury.  In activity (7), for example, The Club alleged Defendant Briscoe *terminated* its contract in retaliation for its complaints (presumably complaints about the termination of its Springdale contract, Mary Lin's inclusion of

another after-school program, and/or Defendant Briscoe's initial attempt to terminate The Club).  At the pleading stage, based on the current briefing, the Court cannot say The Club unreasonably believed its termination involved a contractual injury within the meaning of Section 1981.

Defendants insist the termination did *not* "implicate[] an impairment of a contractual right under § 1981." (Dkt. 8 at 9.)  But a contract termination plausibly falls within Section 1981's definition of a contractual injury, which expressly includes the "termination of contracts" or any interference with "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); *see Bush v. Houston Cnty. Comm'n*, 414 F. App'x 264, 266 (11th Cir. 2011) (Section 1981 prohibits "terminating contracts on the basis of . . . race").  Even assuming The Club's contract was terminable at will—as Defendants suggest—that would not "diminish the contractual nature of [the] bargain" or the contractual nature of the

injury arising from its termination.  *Farrior v. H.J. Russell & Co.*, 45 F. Supp. 2d 1358, 1365 (N.D. Ga. 1999).[12]

## 2.   Adverse Action and Causation

Defendants claim the second and third elements of Count 2 are missing for the same reasons they argued those elements were missing from Count 1.  (Dkt. 8 at 9–14.)  The Court takes the same position on this argument as it did the first time.  That means the second element is missing only to the extent retaliatory acts (1)–(5) are not adverse actions.

---

[12] Defendants attach to their motion a "Memorandum of Understanding" between APS and The Club.  (Dkt. 8-1.)  It is not entirely clear whether this document is supposed to be the contract between *Mary Lin* and The Club that is repeatedly referenced in the complaint (or, if it is, whether it constitutes the entirety of that contract).  The Memorandum of Understanding arguably expired years before Defendant Briscoe terminated "Mary Lin's contract with The Club."  (*See* Dkts. 4 ¶¶ 29, 30, 33, 40, 57, 68; 8-1 at 6.)  It does not explicitly refer to Mary Lin.  (*See* Dkt. 8-1.)  It establishes only limited contractual rights that—at least on one reading—fall short of the substantive "contract for after-school services" alleged in the complaint.  (*See* Dkts. 4 ¶ 17; 8-1 at 2–4.)  And the complaint alleges that Springdale and Mary Lin terminated *separate* contracts with The Club at *different* times, which suggests the single APS-wide Memorandum of Understanding was not the (only) contract they terminated.  (*See* Dkt. 4 ¶¶ 25–31, 40.)  If the Memorandum of Understanding really is the only contract at issue in this case, the Court is open to revisiting Defendants' argument on a better record at summary judgment.

And, at least based on the arguments in Defendants' briefing, the third element is not missing at all.

### 3.    Conclusion

Count 2 is dismissed to the extent it claims Plaintiff Posey's segregation complaints were protected activity and to the extent it claims retaliatory acts (1)–(5) were materially adverse actions.  Defendants have not shown dismissal is otherwise warranted for failure to plead the elements of a retaliation claim under Section 1981.[13]

### B.    Qualified Immunity for Defendant Briscoe

Defendant Briscoe next claims that, even if she did violate Section 1981, she is entitled to qualified immunity to the extent The Club seeks damages from her in her individual capacity.  The Court agrees.

"The doctrine of qualified immunity protects governmental officials who are sued under 42 U.S.C. § 1983 for money damages in their personal, or individual, capacities"—as Defendant Briscoe is here—"unless their conduct violates clearly established statutory or

---

[13] It is unclear whether an entity can engage in protected activity by opposing retaliation against *itself* based on a complaint made by someone *else* (or by opposing later retaliation for that opposition).  But Defendants do not invoke this argument.  So the Court does not consider it.

constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018); *Fish v. Brown*, 838 F.3d 1153, 1162 (11th Cir. 2016). To invoke qualified immunity, an official must show she "engaged in a discretionary function when [s]he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). The burden then "shifts to the plaintiff" to show the official violated clearly established law and thus "is *not* entitled to qualified immunity." *Id.* To meet that burden, plaintiff must show "the preexisting law was so clear that, given the specific facts facing [the official], one must say that every reasonable official would have understood that what he is doing violates the [statutory] right at issue." *Gates*, 884 F.3d at 1302. "The critical inquiry is whether the law provided the [official] with fair warning that their conduct violated the [statute]." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

"Fair warning is most commonly provided by materially similar precedent from the Supreme Court, [the Eleventh Circuit], or the highest state court in which the case arose." *Gates*, 884 F.3d at 1296; *see J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248,

1260 n.1 (11th Cir. 2018).  A precent is materially similar if "the specific circumstances facing the official are enough like the facts in the precedent that no reasonable, similarly situated official could believe that the factual differences between the precedent and the circumstances facing the official might make a difference to the conclusion about whether the official's conduct was lawful or unlawful, in the light of the precedent." *Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015).

If plaintiff cannot identify a materially similar precedent, the only other way she can establish fair warning is by showing defendant's conduct violated federal law "as a matter of obvious clarity." *Coffin*, 642 F.3d at  1014; *see Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017).  Such a violation exists only where (1) "the words of the federal statute . . . are so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful," or (2) "the case law that does exist is so clear and broad (and not tied to particularized facts) that every objectively reasonable government official facing the circumstances would know that the official's conduct" was unlawful.  *Gaines*, 871 F.3d at 1209; *see Gates*, 884 F.3d at 1296–97.

Obvious clarity cases are "rare" and constitute "a narrow exception to the normal rule that only case law and specific factual scenarios can clearly establish a violation." *Coffin*, 642 F.3d at 1014–15; *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011). This is because "[a] reasonable official's awareness of the existence of an abstract right . . . does not equate to knowledge that *his* conduct infringes the right." *Coffin*, 642 F.3d at 1015. "[P]ublic officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Id.* "Thus, if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.*

The Club does not—and could not—dispute that Defendant Briscoe acted within her discretionary authority when she engaged another after-school company in 2021, attempted to terminate The Club's contract in 2021, and actually terminated The Club's contract in 2022 (the only three retaliatory acts attributable to Defendant Briscoe). So the burden shifts to The Club to show these actions violated clearly established law under Section 1981. The Club has not met that burden.

The Club's argument is just three sentences long. It claims "[s]egregating students by race is illegal," "[r]etaliating against people who complain about racial discrimination is illegal," and "[t]erminating someone's contract is one kind of retaliation." (Dkt. 12 at 23.) These terse assertions—devoid of any further analysis or application—are too generalized and undeveloped to show Defendant Briscoe violated clearly established law in "the specific context of th[is] case." *Sheba Ethiopian Rest., Inc. v. DeKalb Cnty., Georgia*, 2023 WL 3750710, at *8 (11th Cir. June 1, 2023). "[C]learly established law must be particularized to the facts of the case"; simply listing principles at "a high level of generality" is not enough. *White v. Pauly*, 580 U.S. 73, 79 (2017). The Club's conclusory "citation of general rules or abstract rights is insufficient to strip [Defendant Briscoe] of [her] qualified immunity." *Salter for Est. of Salter v. Mitchell*, 711 F. App'x 530, 537 (11th Cir. 2017); *see Jackson v. West*, 787 F.3d 1345, 1353 (11th Cir. 2015) ("plaintiff must *persuade* the court that the law was clearly established that the defendant's conduct *in the circumstances* amounted to" a violation (emphasis added)).

The Club does cite four cases. But, absent any meaningful argument to the contrary, the Court cannot say they are materially

similar or show that Defendant Briscoe violated Section 1981 with obvious clarity.  One simply held that "42 U.S.C. § 1981 encompasses claims of retaliation."  *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008).  And the others don't even involve Section 1981.  *See Jackson*, 544 U.S. at 171 (holding "the private right of action implied by Title IX encompasses claims of retaliation"); *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 235–37 (1969) (holding that, under 42 U.S.C. § 1982, a white man could sue a corporation for terminating his membership in retaliation for his opposition to the corporation's refusal to let him assign his membership to a black man); *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483 (1954) (holding racial segregation in schools violates the Equal Protection Clause of the Fourteenth Amendment).  That is at least arguably a problem because the qualified-immunity analysis is supposed to be "statute-specific."  *Sheba*, 2023 WL 3750710, at *5.

Even assuming the cases could be weaved together in a way that proves Defendant Briscoe violated clearly established law under Section 1981, The Club has not made that showing for the Court.  The Club's allegations involve specific acts (protected activities) that it says

resulted in specific responses (adverse actions).  And yet The Club does not apply the cases it cites to any specific combination of the numerous protected activities and adverse actions alleged in the complaint.  The Club does not isolate any specific protected activity and explain why "every reasonable official would have understood" it was protected under Section 1981.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  The Club does not do that analysis for any specific adverse action either.  And The Club does not engage with the intricate web of facts and theories at issue here, including that Defendant Briscoe allegedly punished a company for complaining about retaliation against the company for someone else's unprotected complaints.

Given the totality of the circumstances, The Club has not met its burden to show Defendant Briscoe violated clearly established law under Section 1981.  So the Court dismisses Count 2 to the extent it seeks damages from Defendant Briscoe in her individual capacity.

### C.   *Monell* Liability for APS

APS claims that, even if Plaintiff adequately pled a violation of Section 1981 in Count 2, APS is not responsible for that violation under

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The Court agrees.

The Club asserts its Section 1981 claim via 42 U.S.C. § 1983.  (Dkt. 4 ¶ 73); *see Butts v. Cnty. of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000) ("§ 1983 contains the sole cause of action against state actors for violations of § 1981.").  That is significant because government entities like APS "cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691.  Instead, under *Monell*, they "may be held liable only [for violations] result[ing] from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1263 (11th Cir. 2010); *see Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1229 (11th Cir. 2022).  This is a "very high" bar.  *Simmons v. Bradshaw*, 879 F.3d 1157, 1169 (11th Cir. 2018).

The Club does not identify any specific APS policy or custom that directly caused the retaliation about which it complains.  *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (direct

34

causation required).  Instead, it claims APS is responsible for the actions of Defendant Briscoe, the APS Chief Academic Officer, the APS Chief of Schools, and the APS Program Director of Academics because the actions of those officials "represent[ed] government policy."  (*See* Dkt. 12 at 18–22.)  The Court disagrees.

"An official represents government policy only if he has final policymaking authority."  *Connor v. Halifax Hosp. Med. Ctr.*, 2002 WL 32290997, at \*4 (11th Cir. June 26, 2002); *see Chabad*, 48 F.4th at 1229 ("Only those municipal officials who have final policymaking authority may subject the municipality to section 1983 liability for their actions."). "The determination of whether or not a particular official has final policymaking authority is governed by state law."  *Chabad*, 48 F.4th at 1229.  APS points out that, under Georgia law, "the Atlanta Board of Education is vested with final policymaking authority for APS."  (Dkt. 8 at 17 (quoting *Vessels v. Atlanta Indep. Sch. Sys.*, 2004 WL 5544745, at \*31 (N.D. Ga. June 28, 2004)).  The Club does not dispute that assertion. (Dkt. 12 at 19; *see also* Dkt. 4 ¶ 4 (Plaintiffs alleging APS is "under the management and control of the Atlanta Board of Education").)  It does not identify another state law that controls.  It does not allege the four

officials were members of the Atlanta Board of Education. It admits Defendant Briscoe did not have the final say on after-school contracts. (Dkts. 4 ¶ 30; 12 at 19.) And it does not allege the other officials had "unreviewable authority" over anything, much less the specific issues that matter in Count 2. *Chabad*, 48 F.4th at 1229–30 (no *Monell* liability because plaintiff did not plead a school superintendent had "unreviewable authority" over the relevant issues). So The Club has not shown any of the officials were final policymakers whose acts were attributable to APS.

The Club counters that the officials "enjoy[ed] substantial supervisory authority within [APS's] chain of command" and had "complete discretion" at "key decision points[s]," even if their "decisions [were] technically subject to review by a higher authority." (Dkt. 12 at 18.) But The Club pulls this standard from caselaw involving Title IX and the Rehabilitation Act, *not* Section 1983. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (Title IX); *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 346-350 (11th Cir. 2012) (applying Title IX caselaw to the Rehabilitation Act due to "striking similarities" between the two statutes); *Doe*, 604 F.3d at 1254–57 (Title IX). These

statutes are "different" and their "standards for establishing liability"—including entity liability—are "not wholly congruent" with the standards applicable under Section 1983. *Hill v. Cundiff*, 797 F.3d 948, 976–77 (11th Cir. 2015).

Indeed, as The Club's own cases show, while Title IX and the Rehabilitation Act do *not* require a "policy maker . . . capable of making an official decision" in order to establish entity liability, Section 1983 *does* require an official "imbued with final policymaking authority." *Liese*, 701 F.3d at 349; *Doe*, 604 F.3d at 1264. That is why, in one of The Club's cases, the court held a school principal met the entity-liability standard under Title IX but *not* under Section 1983. *See Doe*, 604 F.3d at 1254–57, 1263–65; *see also Does v. Se. Delco Sch. Dist.*, 272 F. Supp. 3d 656, 690 (E.D. Pa. 2017) ("Though the actions of an individual administrator cannot bind a school district under *Monell*, they can under Title IX."). The Eleventh Circuit has also been clear that it "strictly interpret[s]" *Monell* "to preclude § 1983 liability for a subordinate official's decisions [even] when the final policymaker delegates decisionmaking discretion to the subordinate," unless the subordinate's decision is "unreviewable." *Doe*, 604 F.3d at 1264; *Chabad*, 48 F.4th at

37

1230.  That approach is flatly inconsistent with the theory on which The Club relies.

Given the totality of the record here, The Club has not shown APS is liable under *Monell* for any alleged violation of Section 1981.  So the Court dismisses Count 2 to the extent it seeks relief from APS.  *See Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 30–31 (2010) (*Monell* applies to claims for prospective relief as well as damages).  This means—among other things—that Count 2 cannot proceed with respect to retaliatory acts (6)–(8) because they allege retaliation only by APS (not Defendant Briscoe).

### D.    Conclusion

Count 2 is dismissed to the extent it claims activities (1)–(2) were protected activities by The Club, claims retaliatory acts (1)–(5) were materially adverse actions, seeks damages from Defendant Briscoe in her individual capacity, and seeks any relief from APS.  The Club may proceed on Count 2 only in regard to activities (3)–(7) and retaliatory act (9) and only to the extent it seeks non-damages relief from Defendant Briscoe.

## V.    Plaintiffs' First Amendment Claim (Count 3)

In Count 3, Plaintiffs claim Defendants retaliated against them in violation of the First Amendment.    (Dkt. 4 ¶¶ 74–79.)    A First Amendment retaliation claim requires a materially adverse action and retaliatory causation.  *See Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477, 479 (2022) (defendant must take "a materially adverse action" it "would not have . . . taken absent the retaliatory motive").    Defendants say Plaintiffs have not pled either requirement "for the same reasons" they failed to do so in Counts 1–2.  (Dkt. 8 at 14.)  Plaintiffs oppose that argument for the same reasons they did in Counts 1–2.  (Dkt. 12 at 17.) So the Court adopts its conclusion from those earlier counts and dismisses Count 3 only to the extent it claims retaliatory acts (1)–(5) were materially adverse actions.

Defendant Briscoe also says she is entitled to qualified immunity to the extent Count 3 seeks damages from her in her individual capacity. (Dkt. 8 at 18–21.)  The Court agrees.  It is undisputed that Defendant Briscoe acted within her discretionary authority when she took the adverse actions about which Plaintiffs complain.  So, to avoid qualified immunity, Plaintiffs must show Defendant Briscoe violated clearly

established law.   Plaintiffs have not met that burden.   Their only qualified-immunity argument is the three generalized sentences that the Court deemed insufficient in Count 2.  And those sentences fail even more clearly here because they say nothing about the First Amendment and because "[i]t is particularly difficult to overcome the qualified immunity defense in the First Amendment context."  *Gaines*, 871 F.3d at 1210.

Finally, APS claims Plaintiffs have not pled *Monell* liability in Count 3 for the same reasons they failed to do so in Count 2.  (*See* Dkt. 8 at 14–18.)  The Court agrees.  Plaintiffs bring their First Amendment claim via 42 U.S.C. § 1983, which triggers the "strict limitations on municipal liability" inherent in that statute.  (Dkt. 4 ¶ 79); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998); *see Denico v. Fla. State Fair Auth.*, 2013 WL 4848267, at *2 (M.D. Fla. Sept. 10, 2013) ("The only vehicle for enforcing plaintiff's First Amendment constitutional claims is § 1983.").  Plaintiffs simply have not overcome those limitations, as explained above in connection with Count 2.  *See Ford v. Gualtieri*, 2018 WL 11216671, at *4 (M.D. Fla. June 12, 2018) ("Properly asserting a claim of municipal liability that meets *Iqbal's* pleading requirements is difficult.").

Count 3 is dismissed to the extent it claims retaliatory acts (1)–(5) were materially adverse actions, seeks damages from Defendant Briscoe in her individual capacity, and seeks any relief from APS. It may proceed only with respect to retaliatory act (9) and only to the extent it seeks non-damages relief against Defendant Briscoe.

## VI. Plaintiffs' ORA Claim (Count 4)

In Count 4, Plaintiffs claim they submitted two ORA requests for APS documents concerning Plaintiffs' discrimination/retaliation complaints, APS told Plaintiffs it had 6,000 responsive documents, and APS failed to produce those documents without explanation in violation of the ORA. (Dkt. 4 ¶¶ 80–85.) APS says the Court lacks supplemental jurisdiction over this state-law claim. (Dkt. 8 at 23–25.) The Court disagrees.

A court has supplemental jurisdictional over state claims that are "so related to [federal] claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims are sufficiently related if they "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997). Plaintiffs' claims satisfy this

test because they each arise from Defendants' alleged discrimination, Plaintiffs' complaints, and Defendants' alleged retaliation for those complaints.   Indeed, the complaint specifically says APS refused to respond to Plaintiffs' ORA requests in retaliation for Plaintiffs' protected activity.  (Dkt. 4 ¶¶ 68, 78.)  Plaintiffs' federal claims seek relief for that retaliation.  And so does Plaintiffs' ORA claim.[14]

APS counters that, even if the Court has supplemental jurisdiction, it should decline that jurisdiction because Plaintiffs' ORA claim "involves a novel and complex issue of Georgia law and presents exceptional circumstances complicating this Court's decision."  (Dkt. 8 at 24–25.) APS cites no authority for this proposition (beyond the general standard in the supplemental-jurisdiction statute).   And its argument is too

---

[14] This distinguishes our case from the two ORA cases on which Defendants rely in their briefing.  (*See* Dkt. 8 at 23–24.)  Defendants' cases did not involve a federal claim that, like the state ORA claim, also sought relief for defendant's failure to produce ORA documents under the ORA.  *See Melinda v. DeKalb Cnty. Sch. Dist.*, 2009 WL 10699686, at *8 (N.D. Ga. Oct. 13, 2009); *Flemming v. Morris*, 2008 WL 2442184, at *5 (M.D. Ga. June 13, 2008).

generalized and conclusory to warrant dismissal at this stage.  So the
Court rejects it.  Count 4 may proceed, at least for now.[15]

## VII.  Conclusion

Defendants' Motion to Dismiss (Dkt. 8) is **GRANTED IN PART**
and **DENIED IN PART**.  Count 1 may proceed only to the extent
Plaintiffs seek relief—other than damages for pain and suffering—from
APS for retaliatory acts (6)–(9).  The Court dismisses the remainder of
Count 1.  Count 2 may proceed only to the extent The Club seeks
non-damages relief from Defendant Briscoe for terminating The Club's
contract with Mary Lin (retaliatory act (9)) based on protected activities
(3)–(7).  The Court dismisses the remainder of Count 2.  Count 3 may
proceed only to the extent Plaintiffs seek non-damages relief from
Defendant Briscoe for terminating The Club's contract with Mary Lin
(retaliatory act (9)).  The Court dismisses the remainder of Count 3.
Count 4 may proceed.

---

[15] APS also asks the Court to dismiss *The Club's* claim in Count 4 because
"the complaint alleges that only *Posey* made the ORA request."  (Dkt. 8
at 23 n.4 (emphasis added).)  But APS makes this request in a footnote
rather than the body of its brief.  So the Court declines to consider it.  *See
Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 n.5
(11th Cir. 2019) ("We do not ordinarily consider arguments raised in
passing in one footnote rather than the body of the brief.").

**SO ORDERED** this 21st day of March, 2024.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE